# EXHIBIT "A"

GERALD LAU (SBN 209301)
PRUDENTIA LAW CORPORATION
533 Airport Blvd., Suite 400
Burlingame, CA 94010
Telephone:    (650) 268-8128
Facsimile:    (650) 434-5688
Email: gerald@prudentialaw.com

Attorneys for Plaintiff
Gil del Rosario (dba GDR Express)

**FILED**
**SAN MATEO COUNTY**

MAR 20 2018

Clerk of the Superior Court
By_____
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

## UNLIMITED JURISDICTION

GIL DEL ROSARIO, an individual (dba GDR Express),

Plaintiff,

v.

ASSOCIATED GLOBAL SYSTEMS, INC., a Delaware Corporation, and DOES 1 through 50, inclusive,

Defendants.



18 – CIV – 01406
CMP
Complaint
1040629

CASE NO. __18 C I V 0 1 4 0 6__

**VERIFIED COMPLAINT FOR:**

1)    **FRAUD;**

2)    **BREACH OF CONTRACT;**

3)    **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

4)    **UNJUST ENRICHMENT;**

5)    **DEFAMATION (TRADE LIBEL);**

6)    **QUANTUM MERUIT;**

7)    **UNFAIR BUSINESS PRACTICES (SECRET REBATES, B&PC §§ 17045);**

8)    **UNFAIR COMPETITION LAW (B&PC §§17200)**

## THE PARTIES

1.    Plaintiff Gil del Rosario (dba GDR Express) ("GDR") is an individual residing in

- 1 -

in South San Francisco, California which is in San Mateo County.

2.    Defendant Associated Global Systems, Inc. ("AGS") is a corporation organized and existing under the laws of the State of Delaware, but registered to do business as a foreign corporation in California and actively conducting business in San Mateo County, California out of 415 E Grand Ave., South San Francisco. AGS conducts business throughout the United States and has sufficient minimum contacts with California, and/or otherwise has intentionally availed itself of the markets in California, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.    GDR does not know the true names or capacities, whether individual, corporate, associate, or otherwise of Defendants sued herein as Does 1-50, inclusive. Plaintiff sues such Defendants by such fictitious names and will pray leave to amend this Complaint when their true names and capacities have been ascertained. GDR alleges on information and belief that such defendants are in some manner responsible for the harm hereinafter alleged.

4.    On information and belief, at all times relevant hereto, Defendants, and each of them, acted in concert with and/or was the agent, partner, affiliate, joint-venturer, co-conspirator, aider and abettor, servant, associate, representative, predecessor-in-interest, successor-in-interest, and/or alter ego of the other, and in engaging in the acts, omissions, and occurrences hereinafter alleged, Defendants, and each of them, were acting in concert with and within the course and scope of their authority as agent, partner, affiliate, joint-venturer, co-conspirator, aider and abettor, servant, associate, representative, predecessor-in-interest, successor-in-interest, and/or alter ego of the other. As used herein "Defendant" and "Defendants" shall both mean each and every named Defendant and/or any and all of the Does herein.

5.    Each of the Defendants named in this action has played a role in the unlawful, fraudulent, and unfair business practices that give rise to this lawsuit.

## JURISDICTION AND VENUE

6.    This court has personal jurisdiction over defendant AGS, as it regularly conducts business activities out of their South San Francisco location and their commercial activities in California are substantial, continuous, and systematic.

- 2 -

7.    Defendants' wrongful acts arise out of activities with a nexus in their office in South San Francisco, California.  Therefore, pursuant to CCP §395.5, venue is proper in this Court.

8.    The amount in controversy is in excess of $25,000.00 and thus this matter is properly designated as a case of general jurisdiction.

## INTRODUCTION

9.    Plaintiff GDR Express is a shipping and delivery company that is and has been contracted since 2012 with Defendant AGS, a logistics company, to provide shipping and delivery services.

10.    From 2012 to the beginning of 2014, the volume of business between GDR and AGS steadily and significantly increased, and by 2014 GDR was generating revenues from business with AGS in excess of $2,000,000.00.

11.    In the Fall of 2013, GDR's main accounting contact at AGS, Ashley Beardon, and the dispatch at that time, Travis Blair, both left AGS and Mike McDonald (manager) and Sherry Sherman (dispatch) took over Ashley's role in entering jobs and bills into the "AS400" and "CAAP" systems (the logistics and accounting software utilized by AGS), as the case may be, and in handling accounting and payables.

12.    Beginning from that time, AGS began to skip payments, arbitrarily reduce payments to GDR for services already rendered and billed, and to not pay bills timely.

13.    A couple of months after this continued, Mike McDonald approached Gil del Rosario personally and requested that GDR pay him to do the accounting and entry charges.  It was the responsibility of AGS to process bills submitted by GDR and other consultants, and to perform their own accounting and data entry.  There is no reason for GDR to pay AGS to handle AGS' accounting and data entry.  It was clear to Gil del Rosario, that this was really a request for a bribe in order to continue to pay GDR accurately and timely and to get more assignments and more lucrative shipping and delivery assignments.

14.    Mr. del Rosario, recognizing that this kind of request for a bribe was illegal, improper and unethical did not make such a payment.

- 3 -

15. The consequence to his refusal was that the reduction in payments to GDR (for services contracted and already rendered) intensified, and payments to GDR were not made timely.

16. AGS also began to make defamatory statements about GDR and began to reduce the quantity and quality of delivery jobs assigned to GDR and GDR's business suffered immensely until finally it had to file for bankruptcy in 2016.

17. By manipulating its accounting system, AGS siphoned funds that were intended by customers to be paid to GDR, the company actually providing the services, and used those funds to pay another competing contractor that did not actually provide the services, but that paid kickbacks to AGS.

18. Following GDR's refusal to pay bribes or kickbacks to AGS, AGS also made discriminatory statements about GDR on the basis of the race of its principal Gil del Rosario and its employees.

19. AGS called GDR employees racially derogatory names such as "wetback" and "spic", in violation of FEHA, specifically at Cal. Gov. Code §12940(j)(1).

20. AGS received bribes and kickbacks from one of GDR's competitors, and would award said competitor more and better delivery assignments.

21. The "favored" competitor received numerous special privileges from AGS due to the fact that it paid AGS kickbacks. For example, the "favored" competitor was paid much more for the same services than GDR would be paid for the same deliveries. Further, GDR would only be allowed to pick up shipments on the date that the delivery was to be made. However, the "favored" competitor would be permitted to pick up the shipment well in advance of the delivery date. This was a tremendous advantage to said competitor not only because it had more time in which to make the delivery, but also because it could group shipments together and save more in transportation and payroll costs and related expenses.

22. In addition, the reduction in payments to GDR would free up budget allocation in a particular delivery budget which would then be used to pay the competitor additional fees and special charges. This was advantageous to AGS because it was receiving a kickback on said fees

- 4 -

and charges.

23.     This practice of receiving bribes and kickbacks from favored customers is and has been a continuous and pervasive practice and was knowingly permitted by management.

24.     GDR scaled up its business in 2014 and was expecting growth in 2015 due to prior representations from sales representative that if it continued to provide quality service at competitive prices, it would receive more assignments.  But due to Mr. del Rosario's refusal to pay a bribe to Mr. McDonald, GDR's revenues dropped by over 70% since the majority of GDR's business came from AGS.

25.     AGS' refusal to pay and pay timely for services rendered by GDR, and also withholding of service delivery assignments because GDR would not pay bribes or kickbacks, resulted in a severe decrease in cash flow of GDR and ultimately forced GDR into bankruptcy.

26.     At the end of March, 2016 Jared Lehnick, the district manager, told Gil that, "I think AGS owes you money".

27.     However, AGS has not actually made payments to GDR for unpaid billings.

### FIRST CAUSE OF ACTION FOR FRAUD

28.     Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 27, above.

29.     AGS intentionally misrepresented to GDR that it was awarding shipping and delivery assignments in an open market environment to the contractor that provided the most cost-effective and highest quality service.

30.     In actuality, AGS would award assignments to the contractors that had paid it bribes and/or kickbacks.

31.     AGS misrepresented that it would make payments pursuant to the tariff agreement it entered into with GDR, but in actuality, AGS made payments pursuant to a deceitful and clandestine scheme to receive bribes and kickbacks from vendors.

32.     AGS induced GDR to provide services pursuant to the tariff agreement, but it concealed the fact that it would not pay GDR accurately and timely for said services unless it paid AGS a bribe and/or kickback.

- 5 -

33.    AGS also intentionally concealed the fact that it would only award GDR more deliveries and better deliveries if GDR paid a bribe and/or kickback to AGS.

34.    GDR conducted its business relying on AGS's representations and increased its capital expenditure annually in anticipation of additional delivery and shipping assignments from AGS, since it was consistently providing cost-effective and quality service.

35.    Instead, because GDR would not pay bribes or kickbacks, AGS reduced payments and refused to make timely payments to GDR hurting GDR's cash flow.

36.    AGS also began to reduce assignments to GDR and to award those assignments and the more lucrative assignments to competitors that paid bribes and kickbacks to AGS.

37.    AGS concealed the fact that it would engage GDR to provide service for a delivery assignment, but instead of pay to GDR the funds allocated in the budget for said assignment, it would shortchange GDR and siphon the underpaid amounts to contractors that paid kickbacks even though said contractors provided no service pertaining to said delivery.

38.    GDR reasonably relied upon AGS' misrepresentations, acts, concealments, and omissions.

39.    The fraudulent acts including the illegal siphoning of funds caused GDR to eventually head into bankruptcy and cost GDR millions in lost revenues and other damages, in an exact amount to be determined according to proof but in excess of two million dollars.

40.    AGS' intentional misrepresentations and concealment of material facts regarding the payment of bribes and kickbacks in order to ensure timely and accurate payment for services rendered and to not be discriminated against in the distribution of assignments for not paying illegal bribes and kickbacks, and AGS' illegal siphoning of funds to kickback-paying contractors, were all unconscionable and despicable acts in conscious disregard for GDR's rights causing GDR unjust hardship and subject AGS to exemplary and punitive damages pursuant to Cal. Civ. Code §3294.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

41.    Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 40, above.

- 6 -

42.    AGS and GDR entered into a Cartage Tariff Agreement, as amended and updated over the years, setting forth the terms of payment in exchange for the local shipping pickup and delivery services GDR was to provide, which agreement is attached hereto as Exhibit A (the "Agreement").

43.    GDR fully complied with the terms of the Agreement, and provided services pursuant to assignments given to it by AGS, and in compliance with the Agreement.

44.    AGS breached the Agreement by refusing to make payments as set forth in the Agreement.

45.    Numerous bills for services rendered by GDR were arbitrarily reduced in contravention of the Agreement and those amounts were simply not paid by AGS.

46.    This reduction began following the departure of Ashley Beardon and Travis Blair, and the commencement of Mike McDonald and Sherry Sherman tending to the logistics and accounting systems.

47.    GDR has requested that AGS pay amounts owing to it, but to date, no such payments have been made.

48.    AGS has admitted that it owes GDR money.

49.    To date, AGS owes at least $67,774.70 for 2013, 162,242.21 for 2014, $61,821.45 for 2015, and other amounts to be determined according to proof.

50.    Because of AGS' failure to timely pay GDR, GDR was unable to meet its financial obligations and to make the capital improvements and adjustments needed to grow its business.

51.    As a direct and proximate result of the breaches of the Agreement by AGS, Plaintiff suffered damages, with interest, in an amount in excess of two million dollars.

52.    Although in 2016 AGS agreed to review and to make payments to GDR toward the unpaid balances, no payment was ever made.

## THIRD CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

53.    Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 52, above.

- 7 -

54. AGS and GDR entered into the Agreement that set forth certain rates and charges including regular pickup and delivery rates, special surcharges, hot shot rates, and accessorial charges that AGS must pay to GDR for the referenced services.

55. GDR performed the services for which such rates and charges applied pursuant to the Agreement, and did all significant things that the Agreement required of it.

56. AGS unfairly interfered with GDR's rights under the Agreement to be compensated for said services by not making payment for said services pursuant to the Agreement, not making them timely, and/or not making them fully.

57. The actions of AGS caused damage to GDR of not only the unpaid amounts, but prevented GDR from having the cash flow when needed to maintain its operations and to make capital expenditures and adjustments necessary for its financial survival.

### FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

58. Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 57, above.

59. As a consequence of the fraudulent actions set forth *infra*, AGS has been unjustly enriched with bribes and kickbacks from one or more contractors who agreed to pay them.

60. Furthermore, AGS took moneys owed to GDR and instead paid a contractor those sums in order to obtain a kickback.

61. The sum that AGS has been unjustly enriched is an amount to be proven at trial, but said sum should be disgorged and paid to GDR.

### FIFTH CAUSE OF ACTION FOR DEFAMATION (TRADE LIBEL)

62. Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 61, above.

63. Following GDR's refusal to pay the bribes and kickbacks demanded by AGS, AGS began to slander GDR within AGS and in statements made to competitors and other vendors.

64. AGS made statements such as, "GDR is always late with AGS deliveries", which was known by AGS to be untrue, as GDR is typically on time with its deliveries.

- 8 -

65.    AGS also made statements such as, "GDR breaks and/or damages AGS customer furniture freight", when GDR did not break or damage customer furniture freight, and such statements were known to be untrue.

66.    AGS also made derogatory statements such as, "GDR drivers are liars", "GDR drivers are stupid and incompetent at doing their jobs for AGS and their customers", "GDR drivers never follow AGS instructions for the jobs", when such statements were known to be untrue.

67.    The aforementioned defamatory statements were made primarily to encourage customers to not request GDR as the delivery company, because GDR refused to pay bribes and kickbacks, and to encourage customers to request other freight companies that would pay bribes and kickbacks.

68.    AGS knew that those statements were untrue or acted with reckless disregard of the veracity of those statements.

69.    AGS knew or should have known that others might act in reliance on those statements, causing financial loss to GDR.

70.    GDR suffered direct financial harm because those to whom AGS made the defamatory statements acted in reliance of AGS' defamatory statements.

71.    AGS' action in making the defamatory statements was a substantial factor in causing GDR's harm.

72.    GDR was harmed by AGS' defamatory statements in amount to be proven at trial.

**SIXTH CAUSE OF ACTION FOR QUANTUM MERUIT**

73.    Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 72, above.

74.    GDR provided services to customers of AGS without any implication that they were gratuitously rendered. Rather, the expectation of compensation for said services was understood by all parties.

75.    The reasonable value of the services rendered by GDR were set forth in the invoices and bills submitted to AGS and represent the values that AGS pays with regularity to its

- 9 -

contractors.

76.    Nevertheless, AGS failed to pay to GDR the reasonable value of the services rendered amounting to approximately $67,774.70 for 2013, 162,242.21 for 2014, $61,821.45 for 2015, and other amounts to be determined according to proof.

77.    Therefore GDR is entitled to an award of an amount to be determined according to proof, but at least 291,838.36 representing reasonable compensation for the services it provided.

## SEVENTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES

## (SECRET REBATES, B&PC § 17045)

78.    Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 77, above.

79.    AGS operates essentially as a broker for freight and delivery services with AGS taking the orders from the customers, and then routing them to contractors that provide the actual services.

80.    There exists a competitive market among the contractors where each strives to provide the best quality of service at the best price to AGS. This directly relates to the market for pickup and delivery and freight services and affects the prices ultimately paid by the customer for delivery and freight.

81.    AGS gave secret payments, commissions, services, and privileges to at least one other contractor as a discriminatory practice to create a "favorable" contractor arrangement to the detriment of other competitors.

82.    GDR, a competitor, was harmed by this practice.

83.    The secret payments, commissions, services, and privileges had a tendency to destroy competition.

84.    AGS' actions were the cause of GDR's harm.

85.    GDR suffered damages in an amount to be proven at trial.

86.    In accordance with California B&PC §17082, GDR requests that judgment be entered for three times the amount at which Plaintiff's actual damages are assessed.

87.    GDR is also entitled to, and hereby requests attorneys' fees and costs under

California B&PC §17082 in connection with bringing this action.

## EIGHTH CAUSE OF ACTION FOR UNFAIR COMPETITION (B&PC §§17200)

88.    Plaintiff reincorporates by reference as though fully set forth herein, each and every allegation of paragraphs 1 through 87, above.

89.    The unfair, unlawful, and fraudulent actions taken by AGS described herein constitute unfair competition, as defined by California B&PC §17200.

90.    AGS' practice of receiving secret bribes and kickbacks from certain of its contractors is unlawful pursuant to, California Business and Professions Code §17045 (Secret Rebates), California Penal Code §641.3 (commercial bribery), and common law fraud and deceit, among others.

91.    AGS' destruction of marketplace competition through its practice to favor certain contractors that pay it secret bribes and kickbacks is unfair and tends to destroy competition.

92.    Furthermore, its actions to retaliate against and penalize GDR for not paying a secret bribe or kickback is also unfair.

93.    AGS' deception and concealment of its plan to solicit and receive secret bribes and kickbacks from its contractors in order for them to receive preferred treatment or even just treatment in accordance with contract, constitute fraudulent acts causing great damage to GDR.

94.    AGS' diversion of funds in the budget of a delivery assignment from the contractor actually providing the service to one that did not provide any service for that assignment merely to obtain a kickback was unfair and fraudulent.

95.    As a direct and proximate result of AGS' unlawful, deceptive, unfair, and fraudulent conduct, GDR suffered injury in fact and the loss of money or property in an amount to be proven at trial, but not less than two million dollars.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.    Enjoining Defendants from continuing to collect secret bribes and kickbacks;

- 11 -

2. Awarding compensatory damages according to proof and determined at trial, but in excess of two million dollars;

3. For interest on the damages according to proof at the legal rate;

4. Awarding exemplary and punitive damages on plaintiff's cause of action for fraud;

5. Awarding treble damages on plaintiff's cause of action for unfair business practices;

6. Awarding attorneys' fees on plaintiff's causes of action for unfair business practices and unfair competition;

7. Granting such other and further relief as this court may deem just and proper.

Dated:  March 19, 2018                    PRUDENTIA LAW CORPORATION


By: _____
Gerald Lau
Attorneys for Plaintiff Gil del Rosario
(dba GDR Express)

## VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief. As to such matters the undersigned certifies as aforesaid that he possesses reasonable information and that he verily believes the same to be true.

Gil del Rosario

By: _____

Date: _____3/15/2018_____

- 13 -