UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL DEL ROSARIO, | Case No.18-cv-02447-EDL |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| ASSOCIATED GLOBAL SYSTEMS, INC., | Re: Dkt. No. 3 |
| Defendant. | |

Before the Court is Defendant Associated Global Systems, Inc.'s ("Defendant" or "AGS") motion to dismiss Plaintiff Gill Del Rosario's (d/b/a GDR Express) ("Plaintiff" or "GDR Express") complaint on the grounds that Plaintiff is judicially estopped from raising his claims. For the following reasons, the Court GRANTS the motion to dismiss the complaint with prejudice.

## I.   FACTUAL BACKGROUND

The following facts are taken from the verified complaint. GDR Express is a shipping and delivery company that has contracted with AGS, a logistics company, since 2012 to provide shipping and delivery services. Compl., ¶ 9. From 2012 to the beginning of 2014, the volume of business between GDR Express and AGS steadily and significantly increased. Id., ¶ 10. But then in the fall of 2013, AGS experienced personnel changes in its accounting and dispatch roles, and from that time forward AGS began to skip payments to GDR Express, arbitrarily reduce payments for services already rendered and billed, and to not pay bills in a timely manner. Id., ¶¶ 11-12.

After this began, AGS's manager approached GDR Express and asked that GDR Express pay him to do the accounting and entry charges that had fallen off after the personnel changes. Id., ¶ 13. GDR Express considered the manager's request a bribe to continue to pay GDR Express accurately and in a timely manner and to give GDR Express additional and more lucrative

United States District Court
Northern District of California

shipping and deliver assignments, and GDR Express did not make the requested payment. Id., ¶¶ 13-14.  As a result of the refusal to make the requested payment, AGS's payments to GDR Express were further reduced and payments continued to not be made in a timely manner. Id., ¶ 15.  At the end of March 2016, a district manager GDR Express told GDR Express's principal that, "I think AGS owes you money." Id., ¶ 26.  AGS owes GDR Express $67,774.70 for 2013, $162,242.21 for 2014, and $61,821.45 for 2015, as well as other unspecified amounts. Id., ¶ 49.

Instead of making the payments it owed to GDR Express, AGS used the funds it should have paid to GDR Express to pay a competing contractor who paid kickbacks to AGS, and it also awarded more and better assignments to this competitor. Id., ¶¶ 17, 20-22.  This practice of receiving bribes and kickbacks from favored customers has been a continuing practice within AGS that was knowingly permitted by management. Id., ¶ 23.

AGS also began making negative and false statements about GDR Express -- some of which were based on the race of GDR Express's principal -- and reduced the assignments it made to GDR Express. Id., ¶¶ 16, 18.  Because the majority of GDR Express's business came from AGS and GDR Express had scaled up its business based on representations that AGS would continue to give it more assignments if it continued to provide quality service at competitive prices, GDR Express's business suffered greatly and it entered into bankruptcy in 2016. Id., ¶¶ 16, 24-25.

## II.    PROCEDURAL HISTORY

Plaintiff filed a verified complaint with the Superior Court of California, San Mateo County, on March 20, 2018.  Dkt. No. 1.  The complaint alleged claims of: (1) fraud; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment; (5) defamation (trade libel); (6) quantum meruit; (7) unfair business practices (secret rebates, Bus. & Prof. Code § 17045); and (8) violation of the unfair competition law (Bus. & Prof. Code §§ 17200 et seq.).

Defendant removed the case to federal court on April 24, 2018 and filed the motion to dismiss on April 25, 2018.  Dkt. Nos. 1, 3.  Plaintiff opposed the motion on May 25, 2018.  Dkt. No. 22.  Defendant filed a reply on June 6, 2018.  Dkt. No. 23.  The Court held a hearing on June

2

19, 2018.

## III.   LEGAL STANDARD

The court may dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)). The court should grant a motion to dismiss when the complaint fails to state a cognizable legal theory or states a cognizable legal theory but fails to allege facts sufficient to support that theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

When considering a motion to dismiss, the reviewing court treats all of the Plaintiff's factual allegations as true but is not bound by legal conclusions asserted as factual allegations. Ashcroft, 556 U.S. at 678. The court should not consider material that is outside the pleadings. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). "Generally, the scope of review on a motion to dismiss . . . is limited to the contents of the complaint." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). However, "[a] court may . . . consider certain materials -- [including] matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

## IV.   DISCUSSION

### A.   Request for Judicial Notice

According to Federal Rule of Evidence 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A matter that is properly the subject of judicial notice may be considered with the complaint when deciding a motion to dismiss for failure to state a claim. See Skilstaf, Inc. v. CVS Caremark Corp., 669 F3d 1005, 1016 n.9 (9th Cir. 2012).

Defendant seeks judicial notice of several documents filed in Plaintiff's recent Chapter 13 bankruptcy proceedings, In re Gil San Juan Del Rosario, 16-30468-DM (N.D. Cal. filed Apr. 28,

United States District Court
Northern District of California

3

2016): (1) Chapter 13 Voluntary Petition (Apr. 28, 2016); (2) Summary of Assets and Liabilities (May 13, 2016); (3) Chapter 13 Plan (May 13, 2016); (4) Amended Chapter 13 Plan (May 26, 2016); (5) Order Confirming Plan (Mar. 17, 2017); and (6) Statement of Business Investigation (Mar. 28, 2017). See Request for Judicial Notice ("RJN"), Exs. A-F. Defendant also requests judicial notice of the following document from an earlier bankruptcy proceeding, In re Gil San Juan Del Rosario, No. 09-30118-DM: Order Discharging Debtor (June 16, 2009). See RJN, Ex. G.

A court can take judicial notice of a record from another court when considering a motion to dismiss without converting it into a motion for summary judgment. See U.S. ex rel Robinson Racheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). A bankruptcy court order can be judicially noticed because such an order is a matter of public record. Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 857 n.1 (9th Cir. 2008). Similarly, a court may judicially notice a record of bankruptcy proceedings. Id., n.2.

By taking judicial notice of another court's records, the court "does not . . . accept the other courts' findings of fact as true." Fant v. Residential Servs. Validated Pubs., 2007 WL 833178, at *3 (E.D. Cal. Mar. 16, 2007) (citing Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003)). "[A] court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." Wyatt, 315 F.3d at 1114 (overruled on other grounds by Albino v. Baca, 747 F.3d 1162, 1168-71 (9th Cir. 2014)). In Fant, for example, the court took judicial notice of certain bankruptcy filings

> not for the purpose of considering the truth or falsity of the contents therein, but rather with various objects of noting what has been filed in the other actions, what has been represented, the status of particular proceedings at any given time as reflected by filed documents, what matters have been decided, and so forth, as is pertinent to the issues raised in connection with the motions pending before the Court.

Fant, 2007 WL 833178, at *3. Accordingly, the Court takes judicial notice of these bankruptcy

United States District Court
Northern District of California

4

court documents for purposes of deciding the motion to dismiss.  See Carr v. Beverly Health Care & Rehab. Servs., 2013 WL 5946364, at *2-6 (N.D. Cal. Nov. 5, 2013).

Defendant's motion sets forth the information from the bankruptcy documents that it believes is pertinent for deciding this motion.  Plaintiff filed a petition for Chapter 13 bankruptcy in United States Bankruptcy Court for the Northern District of California on April 28, 2016, which preceded Plaintiff's filing of the complaint in this lawsuit by nearly two years.  See RJN, Ex. A.

On May 13, 2016, Plaintiff filed a Chapter 13 plan.  Id., Ex. B.  On that same date, he filed his bankruptcy schedules and Statement of Financial Affairs, which included Plaintiff's sworn declaration.  Id., Ex. C.  Category 33 of Schedule A/B includes a request for the bankruptcy petitioner to list any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment."  Id. at 7.  Category 33 provides the petitioner with the following examples of such claims: "[a]ccidents, employment disputes, insurance claims, or rights to sue."  Id.  Plaintiff's response to Category 33 was "no."  Id.

On May 26, 2016, Plaintiff filed an amended plan.  Id., Ex. D.  On March 17, 2017, the bankruptcy court confirmed Plaintiff's Chapter 13 plan, which was approximately one year before Plaintiff filed the complaint in this case.  Id., Ex. E.  On March 28, 2017, the Chapter 13 Trustee filed a statement of investigation following its business examination of Plaintiff pursuant to 11 U.S.C. § 1302(c).  Id., Ex. F.  The statement of investigation notes that the Trustee conducted the meeting of creditors on July 7, 2016 and includes a statement of Plaintiff's business assets.  Id.

### B.    Judicial Estoppel

"The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process."  Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (citing Religious Technology Ctr. v. Scott, 869 F.2d 1306, 1311 (9th Cir. 1989)).  Application of the doctrine "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine's application "is not limited to bar the assertion of inconsistent

United States District Court
Northern District of California

positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." Id. at 783. Judicial estoppel is "an equitable doctrine invoked by a court at its discretion." Id. See also Dzakula v. McHugh, 746 F.3d 399, 402 (9th Cir. 2014). "[A] party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Hamilton, 270 F.3d at 783.

Courts may consider the following three factors when determining whether to apply the doctrine of judicial estoppel: (1) whether the party's later position is "clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 782-83 (citing New Hampshire v. Maine, 532 U.S. 742 (2001)). However, these three factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." Ah Quin v. Cnty. of Kauai Dep't of Transp., 733 F.3d 267, 270-71 (9th Cir. 2013).

In the bankruptcy context, "the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Id. at 271. The Ninth Circuit has held that "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." Hamilton, 270 F.3d at 784. A debtor need not know all facts at the time of the bankruptcy proceeding but will be barred from pursuing claims when he knows that he may have a possible cause of action. See Hay v. First Interstate Bank, N.A., 978 F.2d 555, 557 (9th Cir. 1992); In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999). However, judicial estoppel does not apply when the debtor inadvertently or mistakenly omitted a claim from a bankruptcy

United States District Court
Northern District of California

6

filing. See Ah Quin, 733 F.3d at 271. Where the debtor subsequently amended his previously incomplete bankruptcy filings to make the necessary disclosures and gives the bankruptcy court an opportunity to process the disclosures, the debtor's inadvertence or mistake will be excused if he did not subjectively intend to hide his claims. Id. at 273, 274-75.

Here, Plaintiff mainly argues that his failure to list his claims in his bankruptcy proceedings was inadvertent or a mistake, but he also contends that he has not received an unfair advantage in the bankruptcy proceedings as a result of his non-disclosure of the claims.

### 1. Inconsistent Positions

Defendant contends that Plaintiff's lawsuit is "clearly inconsistent" with his earlier failure to list his claims in his bankruptcy schedule. The failure to list a claim on a bankruptcy schedule is a clearly inconsistent position. See Dzakula, 746 F.3d at 402 (affirming application of judicial estoppel to dismiss lawsuit that was filed approximately two months after the debtor filed a Chapter 7 bankruptcy petition); Caviness v. England, 2007 WL 1302522, at *12 (E.D. Cal. May 3, 2007) (finding that the plaintiff took inconsistent positions in the lawsuit and in his bankruptcy proceedings when he failed to list any of three employment discrimination claims, two of which were filed after he instituted the bankruptcy proceedings); Corradi v. Lane Funeral Homes, Inc., 2017 WL 6055231, at *3 (N.D. Ohio Dec. 7, 2017); Weakley v. Roberts, 2017 WL 3781341, at *3-4 (N.D. Ala. Aug. 31, 2017) (appeal pending).

In the bankruptcy schedule he filed on May 13, 2016, Plaintiff stated that he had no claims against any third parties. See RJN, Ex. C. Two years later, Plaintiff's complaint in this lawsuit raised claims with alleged damages "in excess of two million dollars." Compl., Prayer for Relief at 12. These are clearly inconsistent positions that establish the first factor of the judicial estoppel test.

### 2. Judicial Acceptance of an Inconsistent Position

The bankruptcy court's confirmation of a reorganization plan constitutes an act of judicial acceptance. See Hamilton, 270 F.3d at 784. The bankruptcy court confirmed Plaintiff's amended reorganization plan on March 17, 2017. See RJN, Ex. E. Thus, prong two of the judicial estoppel test is satisfied.

### 3.     Unfair Advantage

Defendant argues that Plaintiff is attempting to obtain an unfair advantage by failing to disclose the pending action in his bankruptcy schedules and then subsequently asserting the claims for his own benefit in a separate proceeding, thus obtaining "bankruptcy protection while subverting the bankruptcy process." HPG Corp. v. Aurora Loan Servs., LLC, 436 B.R. 569, 578 (Bankr. E.D. Cal. 2010). See also Hamilton, 270 F.3d at 785 ("The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding."). By omitting these claims that he now alleges are worth $2 million, Defendant argues that Plaintiff obtain the creditors' approval and the court's confirmation of his amended plan without proper consideration of this asset. Plaintiff responds that he has not gained an unfair advantage from the non-disclosure because his Chapter 13 bankruptcy case is still open, he is a year into paying his five-year plan, his creditors have filed claims and are receiving payments through the plan, and he has not received a discharge of his debts.

However, Plaintiff confirmed at the hearing that he received an automatic stay after he filed his bankruptcy petition, which is an advantage that courts have recognized as a reason to apply judicial estoppel. See HPG Corp., 436 B.R. at 578-79 (applying judicial estoppel to bar undisclosed claims where the plaintiffs filed successive petitions and obtained successive stys without full disclosure of all assets); Hamilton, 270 F.3d at 785 ("Hamilton did enjoy the benefit of both an automatic stay and a discharge of debt in his Chapter 7 bankruptcy proceeding."). An automatic stay is "quite broad" and "'prevents any collection activity against property of the estate." Burton v. Infinity Capital Mgmt., 862 F.3d 740, 746 (9th Cir. 2017) (quoting Temecula v. LPM Corp. (In re LPM Corp.), 300 F.3d 1134, 1136 (9th Cir. 2002)). It is "self-executing, effective upon the filing of the bankruptcy petition." Gruntz v. Cnty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1081 (9th Cir. 2000) (en banc).

While this advantage is perhaps not as significant as a discharge, it is still an advantage that inured to Plaintiff's benefit by "provid[ing] breathing space to the debtor, prevent[ing] harassment of the debtor, assur[ing] that all claims against the debtor will be brought in the sole

forum of the bankruptcy court, and protect[ing] creditors as a class from the possibility that one or more creditors will obtain payment to the detriment of others." Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993). At the same time, while Plaintiff enjoyed the advantage of the automatic stay, the bankruptcy court also confirmed his repayment plan without being aware of these claims, resulting in an unfair advantage because he "deceived the bankruptcy court and [his] creditors, who relied on the schedules to determine what action, if any, they would take in the matter." Hamilton, 270 F.3d at 785; see also Dzakula, 746 F.3d at 402 (affirming district court's ruling that the plaintiff "derived an unfair advantage in bankruptcy court by failing to list the claim"). Therefore, Plaintiff received an unfair advantage as a result of the non-disclosure.

### 4.    Inadvertence or Mistake

Notwithstanding the satisfaction of all three prongs of the judicial estoppel test, Plaintiff argues that judicial estoppel is not appropriate in this case because his failure to disclose his legal claims against Defendant in the bankruptcy proceeding was inadvertent. Generally, the relevant inquiry when evaluating whether a debtor's failure to list a legal claim in a bankruptcy proceeding was inadvertent or a mistake is whether the debtor had knowledge of the underlying facts constituting the alleged wrong, not whether those facts necessarily give rise to a legal claim. See Hamilton, 270 F.3d at 784; Hay, 978 F.2d at 557; Carr, 2013 WL 5946364, at *5-6. In Hamilton, the court explained that "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have been a possible cause of action, then that is a known cause of action such that it must be disclosed." 270 F.3d at 784-85 (quoting In re Coastal Plains, Inc., 179 F.3d at 208). While knowledge of the pending claim is a relevant factor in deciding this issue, the inquiry looks "more broadly [at] the plaintiff's subjective intent when filling out and signing bankruptcy schedules" in cases where the debtor reopens and amends his bankruptcy schedules to disclose the claims to the bankruptcy court and allows the bankruptcy court to reprocess the bankruptcy with the full and complete information. Ah Quin, 733 F.3d at 272-73, 274-75 (referring to this as lifting the "presumption of deceit").

United States District Court
Northern District of California

Plaintiff argues that this "broader" approach is warranted here because he amended his bankruptcy schedules and he did not subjectively intend to mislead the bankruptcy court by failing to disclose his claims.  In support of his opposition to this motion, Plaintiff filed the declaration of his bankruptcy attorney, Basil Boutris.  See Dkt. No. 22, Bourtris Decl.  Mr. Boutris explained that on May 15, 2018, Plaintiff filed amended schedules in the bankruptcy case fully disclosing this lawsuit against Defendant as an asset of the bankruptcy estate.  Id., ¶ 5.  According to Mr. Boutris, an amended confirmation plan is not necessary in the bankruptcy case because this lawsuit is a contingent asset.  Id., ¶ 6.

Plaintiff's mere filing of amended schedules is not enough to take advantage of the higher subjective intent standard set forth in Ah Quin.  In Ah Quin, the court gave some guidance on what new proceedings must take place in the bankruptcy court to justify lifting the "presumption of deceit."  It explained that "[t]he key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset," Ah Quin, 733 F.3d at 272-73, and that when "the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to reprocess the bankruptcy with the full and correct information, a presumption of deceit no longer comports with" the proper application of judicial estoppel.  Id. at 274-75.  Mr. Boutris's declaration states that reprocessing of the bankruptcy is unnecessary because a plan has already been confirmed.  Boutris Decl., ¶ 6.  Since the bankruptcy court has not taken any steps to "reprocess" the already-confirmed plan, there is a strong argument under the reasoning of Ah Quin that the broader subjective intent test does not actually apply here.  Without a "reprocessing" of the plan, Plaintiff will still receive an unfair advantage and has taken inconsistent positions.  See Ah Quin 733 F.3d at 275-75 (explaining that amendment and reprocessing in the bankruptcy proceeding eliminates the inconsistent positions and unfair advantage that were otherwise created from the failure to disclose).  In addition, other courts have explained that there are further steps that Plaintiff could take to ensure that this asset, even if contingent, is taken into account by the bankruptcy court.  See Zyla v. Am. Red Cross Blood Servs., 2014 WL 3868235, at *5-6 (N.D. Cal. Aug. 6, 2014) (concluding that entering into an amended stipulation with the bankruptcy trustee to apply all proceeds from the lawsuit to the plan

is sufficient to establish a reprocessing of the bankruptcy).

In any case, Plaintiff cannot establish that his failure to disclose these claims was subjectively inadvertent or a mistake, as required under Ah Quin.  Plaintiff filed a declaration in support of his opposition to the motion to dismiss that attests that he did not understand the factual underpinnings of his claims at the time he filed his bankruptcy schedules and that he did not understand that the schedule was asking him to disclose these claims.  However, Plaintiff's declaration about his lack of knowledge of his claims is contradicted by the allegations made in his verified complaint.  The complaint alleges that Defendant started making late underpayments to Plaintiff in 2013.  Sometime after the underpayments began in 2013 with staffing changes in Defendant's accounting and dispatch departments, one of Defendant's managers solicited a bribe from Plaintiff and, after Plaintiff declined to give the requested bribe, the late underpayments increased and Defendant began steering shipping and delivery assignments to at least one competitor that did make the alleged bribe payments.  The complaint specifically alleges that these unlawful actions directly resulted in Plaintiff's decision to file for bankruptcy protection in 2016.  Moreover, the complaint alleges that one of Plaintiff's own managers told him at the end of March 2016 -- one month before Plaintiff filed his bankruptcy petition -- that Defendant owed him money and that Defendant "agreed to review and to make payments to GDR toward the unpaid balances" in 2016 but no payment was ever made.

Plaintiff's declaration acknowledges that he considered Defendant's manager's requested payment to be an improper and unethical bribe.  Dkt. No. 22, Pl. Decl., ¶¶ 4, 14.  The declaration also confirms the complaint's allegation that "[a]s a result" of his refusal to pay the alleged bribe, his business revenues fell by approximately 70% since most of the company's business came from Defendant.  Id. ¶¶ 6-7; Compl., ¶ 24.  Notwithstanding his characterization of the request for payments as a bribe and this significant impact on his business, Plaintiff improbably claims that he merely had a "vague suspicion" about a potential claim against Defendant and only understood the true extent of the fraud by investigating GDR's business records and through later discussions with litigation counsel about pursuing a claim against Defendant.  Pl. Decl., ¶¶ 9, 12-15.

The complaint provides a clear timeline of Defendant's alleged misconduct and shows that

11

Plaintiff was on notice of Defendant's misconduct and a potential claim against it since at least 2016 when he filed for bankruptcy. Plaintiff's complaint is verified and functions as a declaration to the extent that the allegations are based on personal knowledge of facts admissible in evidence. See Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). Plaintiff may not file a subsequent declaration that plainly contradicts the sworn statements in the verified complaint about his knowledge of his potential claims to create a factual issue about his intent (or lack thereof) in failing to disclose his claims against Defendant in his bankruptcy case. See Adler v. Federal Republic of Nigeria, 107 F.3d 720, 728 (9th Cir. 1997) (courts may take into account contradictions between declarations when determining how much weight to give them). Accordingly, the Court does not credit Plaintiff's declaration about his incomplete knowledge of his claims. Moreover, Plaintiff's declaration focuses more on his knowledge of the *extent* of the alleged fraud, rather than his lack of knowledge of the misconduct giving rise to the alleged fraud. Other courts have rejected an argument that a debtor was ignorant that he had a potential claim, particularly where he was represented by counsel in the bankruptcy, as Plaintiff was here. See Carr, 2013 WL 5946364, at *6 ("'ignorance of the law is no excuse,' particularly where, as here, [the debtor] was represented by counsel during bankruptcy proceedings").

Plaintiff's incredible contention that he was not aware of his claims is further belied by his actions after filing his bankruptcy schedules. According to Plaintiff's declaration, he undertook an internal investigation of the alleged fraud and, two months after the investigation started, he received preliminary results that "opened [his] eyes to the fact that AGS had been siphoning significant amounts of money from GDR Express." Pl. Decl, ¶ 12. If he only found out about the true extent of the misconduct shortly after filing the bankruptcy petition, then the fact that he never updated his schedules supports the conclusion that prior to the motion to dismiss being filed in this case he did not inadvertently omit his potential claims while proceeding to file this lawsuit against Defendant without informing the bankruptcy court. Moreover, the timing of the amended schedule disclosing his claims is dubious because he filed it with the bankruptcy court only after Defendant filed this motion to dismiss on the grounds of judicial estoppel. This is in contrast to Ah Quin, in which the Ninth Circuit noted that it was the plaintiff's counsel who first alerted the

United States District Court
Northern District of California

defendant's counsel to the bankruptcy, which tended to show that the plaintiff was not deliberately hiding the litigation from anyone. Ah Quin, 733 F.3d at 278. Other courts have distinguished Ah Quin when the debtor only amended his bankruptcy filings after the defendant in the non-disclosed litigation filed a dispositive motion on judicial estoppel grounds. See Ceja-Corona v. CVS Pharm., Inc., 2014 WL 12040019, at *3 (E.D. Cal. July 28, 2014) (discussing cases).

Finally, Plaintiff's statements in his declaration that he did not understand what information the bankruptcy schedule was asking him to provide cannot be credited, particularly when compared with the vague declaration filed by his bankruptcy counsel, Basil Boutris. Plaintiff states that "the question was vague and I did not fully comprehend the question at the time." Pl. Decl., ¶ 15. However, Category 33 of Schedule A/B is straightforward and not vague. See RJN, Ex. C (asking about any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment"). Furthermore, Mr. Boutris attests that Plaintiff did not mention "anything about a potential lawsuit against Associated Global Systems, Inc. (or any other entity)," Boutris Decl., ¶ 4, but his declaration does not go beyond that statement to describe his conversations with Plaintiff regarding the information sought in the schedule. Notably, Mr. Boutris does not state that he failed to counsel Plaintiff about the meaning of the schedule's question soliciting information about claims against third parties or that Plaintiff did not seem to understand what information the schedule sought. Neither Plaintiff nor his bankruptcy attorney's declarations support the conclusion that Plaintiff's failure to list his claims against Defendant was subjectively inadvertent or a mistake.

For all of these reasons, the Court concludes that Plaintiff has not demonstrated that his initial non-disclosure in the bankruptcy court was due to inadvertence or mistake, even under the broader test set forth in Ah Quin. Accordingly, Plaintiff is judicially estopped from pursuing the claims he has raised against Defendant in this case.

## V.   CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss the complaint with prejudice.

13

**IT IS SO ORDERED.**

Dated: July 13, 2018

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge